IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| HARTIG DRUG COMPANY INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) | Civ. No. 14-719-SLR |
| | ) |
| SENJU PHARMACEUTICAL CO. LTD., | ) |
| KYORIN PHARMACEUTICAL CO. LTD., | ) |
| and ALLERGAN INC., | ) |
| | ) |
| Defendants. | ) |

J. Clayton Athey, Esquire and Eric J. Juray, Esquire of Prickett, Jones & Elliott, P.A., Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Brent W. Landau, Esquire and Melinda R. Coolidge, Esquire of Hausfeld LLP and Gregory A. Frank, Esquire and Marvin L. Frank, Esquire of Frank & Bianco LLP.

Jack B. Blumenfeld, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Defendant Allergan Inc. Of Counsel: Ashley E. Johnson, Esquire, Jason C. McKenney, Esquire and M. Sean Royall, Esquire of Gibson, Dunn & Crutcher LLP.

Stephen B. Brauerman, Esquire of Bayard, P.A., Wilmington, Delaware. Counsel for Defendant Senju Pharmacuetical Co. Ltd. Of Counsel: William F. Sondericker, Esquire of Carter, Ledyard & Milburn LLP and Derrick Takeuchi, Esquire of Greenberg, Whitcombe & Takeuchi, LLP.

David Evan Ross, Esquire and Benjamin J. Schladweiler, Esquire of Seitz Ross Aronstam & Moritz LLP. Counsel for Defendant Kyorin Pharmaceutical. Of Counsel: Sara R. Kusiak, Esquire and Rosanna K. McCalips, Esquire of Jones Day.

**MEMORANDUM OPINION**

Dated: August 19 , 2015
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On June 6, 2014, plaintiff Hartig Drug Company, Inc. ("Hartig" or "plaintiff") filed a complaint alleging certain antitrust violations concerning defendants Senju Pharmaceutical Co., Ltd. ("Senju"), Kyorin Pharmaceutical Co., Ltd. ("Kyorin"), and Allergan, Inc.'s ("Allergan") (collectively "defendants") aqueous liquid gatifloxacin ophthalmic products, Zymar® and Zymaxid®. (D.I. 1) Defendants are the owners or licensees of U.S. Patent Nos. 4,980,470 ("the '470 patent") and 5,880,283 ("the '283 patent"), which are listed in the United States Food and Drug Administration's ("FDA's") publication titled "Approved Drug Products with Therapeutic Equivalence Evaluations" (known as the "Orange Book") for Zymar® and Zymaxid®. (Id. at ¶¶ 36, 42, 45, 51, 72-73) Hartig brings this putative class action on behalf of all direct purchasers in the United States who purchased or paid for branded Zymar® or Zymaxid® products from June 15, 2010 until the allegedly anticompetitive effects of defendants' conduct cease (the "class period"). (Id. at ¶ 1) Hartig purchased Zymar® and Zymaxid® from AmerisourceBergen Drug Corporation ("Amerisource"). (Id. at ¶ 9) Amerisource directly purchased Zymar® and Zymaxid® from Allergan subject to a distribution services agreement ("DSA") during the class period. (Id.)

Hartig asserts that defendants engaged in unlawful anticompetitive acts and practices including:[1] (1) filing sham patent lawsuits; (2) committing fraud upon the

---

[1] Hartig alleges the same misconduct set forth in the complaint filed by Hartig's competitors Apotex, Inc. and Apotex Corp. (collectively, "Apotex") against defendants in a related lawsuit in this court. (Civ. No. 12-196, D.I. 1)

United States Patent & Trademark Office ("USPTO"); and (3) "product hopping" to preclude pharmacies from substituting generic gatifloxacin ophthalmic formulations form defendants' more expensive branded drugs. (*Id.* at ¶ 3) Specifically, Hartig alleges that defendants: (1) monopolized in violation of Section 2 of the Sherman Act; (2) conspired to monopolize in violation of Section 2 of the Sherman Act; and (3) contracted, combined, or conspired to restrain trade in violation of Section 1 of the Sherman Act. (*Id.* at ¶¶ 153-192) Presently before the court is Allergan's motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction over the subject matter (D.I. 14), and Kyorin and Senju's joint motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim (D.I. 17).[2] The court has jurisdiction pursuant to U.S.C. §§ 1331 and 1337(a) and 15 U.S.C. § 15.

## II. STANDARD OF REVIEW

Not only may the lack of subject matter jurisdiction be raised at any time, it cannot be waived and the court is obliged to address the issue on its own motion. *See Moodie v. Fed. Reserve Bank of NY*, 58 F.3d 879, 882 (2d Cir. 1995). Once jurisdiction is challenged, the party asserting subject matter jurisdiction has the burden of proving its existence. *See Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000). Under Rule 12(b)(1), the court's jurisdiction may be challenged either facially (based on the legal sufficiency of the claim) or factually (based on the sufficiency of jurisdictional fact). *See* 2 James W. Moore, *Moore's Federal Practice* § 12.30[4] (3d ed. 1997). Under a facial challenge to jurisdiction, the court must accept as true the allegations contained in the complaint. *See id.* Dismissal for a facial challenge to

---

[2] Allergan joined in the motion to dismiss for failure to state a claim. (D.I. 19)

jurisdiction is "proper only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'" *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

Under a factual attack, however, the court is not "confine[d] to allegations in the . . . complaint, but [can] consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction." *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997); *see also Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891-92 (3d Cir. 1977). In such a situation, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Carpet Group*, 227 F.3d at 69 (quoting *Mortensen*, 549 F.2d at 891).

## III. DISCUSSION

Section 4 of Clayton Act provides a private cause of action for "any person injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15. In *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 735 (1977), the United States Supreme Court "established the general rule that only direct purchasers from antitrust violators may recover damages in antitrust suits." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 369 (3d Cir. 2005). Indirect purchasers are generally not entitled to recover damages for passed-on overcharges. *Id*. This is referred to as the "indirect purchaser rule." Three policy reasons justified the Court's decision to impose this rule: "(1) a risk of duplicative liability for defendants and potentially inconsistent adjudications could arise if courts permitted both direct and

3

indirect purchasers to sue defendants for the same overcharge; (2) the evidentiary complexities and uncertainties involved in ascertaining the portion of the overcharge that the direct purchasers had passed on to the various levels of indirect purchasers would place too great a burden on the courts; and (3) permitting direct and indirect purchasers to sue only for the amount of the overcharge they themselves absorbed and did not pass on would cause inefficient enforcement of the antitrust laws by diluting the ultimate recovery and thus decreasing the direct purchasers' incentive to sue." *Id*. at 369-70.

Hartig does not allege that it purchased Zymar® and Zymaxid® directly from defendants during the class period. (D.I. 1 at ¶ 9) Rather, Hartig contends that it has standing to sue as a direct purchaser in that Amerisource "conveyed, assigned, and transferred to Hartig all of its rights, title and interest in and to all causes of action it may have against Defendants under the antitrust laws of the United States . . . arising out of or relating to Amerisource's purchase of Zymar and Zymaxid." (D.I. 1 at ¶ 9) Allergan does not dispute that "an antitrust claim can be expressly assigned." *Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 437 (3d Cir. 1993). Instead, Allergan asserts that the DSA governing the relationship between it and Amerisource prevents such an assignment. In relevant part, the anti-assignment provision contained in the DSA states that "[t]his Agreement may not be assigned by either party without the prior written consent of the other party. Notwithstanding the foregoing, either party may assign its rights and obligations hereunder without the consent of the other party to a subsidiary or affiliate . . . ." (D.I. 16, ex. 1 at § 14(b)) Allergan alleges that it did not consent to the assignment of any rights held by

4

Amerisource under the DSA and, therefore, any purported assignment is invalid. (D.I. 16 at ¶ 4)

The DSA begins by stating that Amerisource and Allergan agree to an "arrangement where [Allergan] agrees to sell products . . . to [Amerisource] . . . so that [Amerisource] may distribute the Product to customers." (D.I. 16, ex. 1 at § 1(a)) The DSA contains, *inter alia*, guidelines governing price, payment and inventory levels, and a recitation of the parties' particular obligations under the agreement. Under the heading of "miscellaneous," the DSA states that "[t]his Agreement contains the entire agreement between the parties and supersedes any prior or contemporaneous agreement or understanding between the parties with regards to the subject matter hereof." (*Id.* at § 14(g)) The DSA also states that Allergan "will comply with federal, state and local laws governing the purchase, handling, sale or distribution of Products purchased under this Agreement." (*Id.* at § 4(i)) The DSA, however, does not specifically mention antitrust law or the assignment of legal claims.

Under Pennsylvania law, which governs the court's reading of the DSA (*id.* at § 14(c)), "an assignment will ordinarily be construed in accordance with the rules governing contract interpretation and the circumstances surrounding the execution of the assignment document," with the caveat that a court should not "modify the plain meaning of the contract under the guise of interpretation." *Crawford Cent. Sch. Dist. v. Com.*, 888 A.2d 616, 623 (Pa. 2005). Allergan argues that, under the plain meaning of the contract, the anti-assignment provision is broad in scope and extends to the assignment of the right to bring suit. Specifically, Allergen argues that because the second sentence of the assignment provision permits assignment of both "rights" and

"obligations" in certain circumstances, the DSA logically encompasses rights. Allergen posits that, at least in the context of ERISA litigation, district courts in the Third Circuit routinely interpret the prohibition against assigning "rights" as including causes of action. *See Lehigh Valley Hosp. v. UAW Local 259 Soc. Sec. Dept',* 1999 WL 600539, at \*3 (E.D. Pa. Aug. 10, 1999); *Temple Univ. Hosp., Inc. v. Grp. Health, Inc.*, 2006 WL 1997424, at \*10 n.8 (E.D. Pa. July 13, 2006); *Torpey v. Blue Cross Blue Shield of Tex.*, 2014 WL 346593, at \*3 (D.N.J. Jan. 30, 2014).

Hartig argues that the DSA is focused on setting the terms for permitting Amerisource to act as an authorized distributor and, therefore, the anti-assignment clause only restricts Amerisource from assigning its right to serve as an authorized distributor of Allergan's products. Hartig relies on a case from the Northern District of California, which interpreted the Restatement of Contracts (Second) in the antitrust context to mean that "the anti-assignment clauses are limited to each party's rights and obligations under the contracts" and not to the assignment of antitrust claims. *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2011 WL 3475408, at \*3 (N.D. Cal, Aug. 9, 2011). [3] The relevant language from the Restatement of Contracts (Second) provides: "Unless the circumstances indicate the contrary, a contract term prohibiting assignment of 'the contract' bars only the delegation to an assignee of the performance by the assignor of a duty or condition." Restatement of Contracts (Second) § 322 (1981). Hartig adds that such an interpretation of the anti-assignment provision is consistent with § 4 of the Clayton Act, 38 Stat. 731, which upholds a strong national interest in

---

[3] The broadest anti-assignment clause at issue in *TFT* stated that "[n]o right, interest, privilege, or obligation of this Agreement shall be assigned." *In re TFT-LCD*, 2011 WL 3475408 at \*3.

promoting private enforcement of anti-trust laws. *See Blue Shield of Virginia v. McCready*, 457 U.S. 465, 472 (1982) (In enacting § 4, "Congress sought to create a private enforcement mechanism that would deter violators and deprive them of the fruits of their illegal actions, and would provide ample compensation to the victims of antitrust violations.").

The parties draw the court's attention to two opinions from the Northern District of California, each of which considered highly analogous facts to the case-at-bar, and each of which reached a different conclusion. *See United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund v. Teikoku Pharma USA*, 2015 WL 4397396 (N.D. Cal. July 17, 2015) (finding that the anti-assignment provision did not bar assignment of causes of action); and *In re Ditropan XL Antitrust Litigation* 2007 WL 2978329, at *2 (N.D. Cal. Oct. 11, 2007) (finding that the anti-assignment provision did bar assignment of causes of action). The court respectfully declines to follow the reasoning in *United Food*, and instead reaches the same conclusion as the court in *Ditropan XL*. In *United Food*, the agreement between the parties prohibited assignment of "this Agreement" or any of its "duties or responsibilities" without the other party's consent. 2015 WL 4397396 at *4. The court reasoned that "a duty is not equivalent to a right arising from a breach of that duty" and, therefore, the assignment of the right to sue for antitrust violations did not violate the anti-assignment provision. *Id.*

Unlike the anti-assignment clause in *United Food*, which did not expressly prohibit assignment of rights, this court is persuaded by Allergan's logic that the anti-assignment clause in the instant agreement refers to both rights and obligations.

7

Accordingly, assignment of a right would conflict with the plain meaning of the anti-assignment provision in the instant DSA. The court also finds that reading the DSA as prohibiting the right to bring a cause of action in the antitrust context is consistent with the DSA as a whole, as well as the circumstances surrounding the execution of the document. In particular, Hartig's antitrust claim is founded on pricing and purchases of Zymar® and Zymaxid® made pursuant to the DSA. Additionally, an antitrust claim fundamentally concerns the question of whether defendants complied with the provision in the DSA ensuring compliance "with federal . . . laws governing the purchase, handling, sale or distribution of Products." (D.I. 16, ex. 1 at § 4(i))[4]

Altogether, the court finds that the DSA forbids the assignment of the right to bring suit. As Hartig does not allege that Amerisource sought the permission of Allergan prior to executing the assignment, the court finds that such assignment is invalid. As such, the court grants Allergan's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). Because the court lacks subject matter jurisdiction, it dismisses the action with respect to the remaining defendants.[5]

## IV. CONCLUSION

For the aforementioned reasons, Allergan's motion to dismiss for lack of jurisdiction over the subject matter (D.I. 14) is granted and defendants' joint motion to

---

[4] This conclusion is consistent with the Restatement of Contracts (Second) § 322, in that the "circumstances" – the factual context (a business relationship memorialized in a contract between a seller and a direct purchaser) and the clear legal principles governing such relationships (those enunciated in *Illinois Brick*) – "indicate the contrary," i.e., indicate that the right to bring an antitrust action cannot be assigned from a direct to an indirect purchaser.

[5] For the same reason, defendants' joint motion to dismiss under 12(b)(6) (D.I. 17) is denied as moot.

8

dismiss for failure to state a claim (D.I. 17) is denied as moot.  An appropriate order

shall issue.